IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 1:11-cr-00197-JLK

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.     **EARL ALBERT MOORE**,

    Defendant.

---

## PLEA AGREEMENT AND STATEMENT OF FACTS RELEVANT TO SENTENCING

---

The United States of America (the government), by and through Gregory A. Holloway, Assistant United States Attorney for the District of Colorado, and the defendant, EARL ALBERT MOORE, personally and by counsel, Robert W. Pepin and Brian R. Leedy, submit the following Plea Agreement and Statement of Facts Relevant to Sentencing, pursuant to D.C.Colo.LCrR 11.1.

### I. PLEA AGREEMENT

The defendant agrees to plead guilty to the Indictment charging him in Count 2 with Use of a Destructive Device During and in Relation to a Crime of Violence in violation of 18 U.S.C. § 924(c).

The government agrees that a three-point reduction in the offense level for acceptance of responsibility is appropriate pursuant to United States Sentencing Commission, Guidelines Manual, § 3E1.1(a) and (b). As part of this disposition, the government agrees to dismiss Count 1 of the Indictment at the time of sentencing.

**COURT EXHIBIT 1**

## II. **ELEMENTS OF THE OFFENSE**

In order to establish a violation of 18 U.S.C. § 924(c) as charged in Count 2, the government would need to prove that:

a) The defendant did commit the crime of Arson of a Building or Other Real Property in Interstate Commerce, which is a crime of violence;

b) the defendant used or carried a firearm, specifically a destructive device;

c) during and in relation to Arson of a Building or Other Real Property in Interstate Commerce.

The phrase "during and in relation to" means that the firearm played an integral part in the underlying crime, that it had a role in, facilitated (i.e. made easier), or had the potential of facilitating the underlying crime.

A defendant knowingly "uses" a firearm when it (1) is readily accessible and (2) is actively employed during and in relation to the underlying crime.

A defendant knowingly "carries" a firearm when he (1) possesses the firearm through the exercise of ownership or control and (2) transports or moves the firearm from one place to another.

The term "firearm" includes destructive device.

*See Tenth Circuit Pattern Criminal Jury Instruction 2.45 (modified).*

## III. STATUTORY PENALTIES

The statutory penalties for Count 2 charging a violation of 18 U.S.C. § 924(c) are not less than 30 years imprisonment, but not more than life imprisonment; not more than a $250,000 fine, or both; not more than 5 years supervised release; $100.00 special assessment fee; and restitution if applicable.

The conviction may cause the loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, and sit on a jury.

A violation of the conditions of probation or supervised release may result in a separate prison sentence.

## IV. STIPULATION OF FACTUAL BASIS AND FACTS RELEVANT TO SENTENCING

The parties agree that there is no dispute as to the material elements which establish a factual basis of the offense of conviction.

Pertinent facts are set out below in order to provide a factual basis for the plea and to provide facts which the parties believe are relevant, pursuant to § 1B1.3, for computing the appropriate guideline range. To the extent the parties disagree about the facts relevant to sentencing, the statement of facts identifies which facts are known to be in dispute at the time of the plea. (§ 6B1.4(b))

The statement of facts herein does not preclude either party from presenting and arguing, for sentencing purposes, additional facts or factors not included herein which are relevant to the advisory guideline computation (§ 1B1.3) or to sentencing in general

(§ 1B1.4). Nor is the Court or Probation precluded from the consideration of such facts. In "determining the factual basis for the sentence, the Court will consider the stipulation [of the parties], together with the results of the pre-sentence investigation, and any other relevant information." (§ 6B1.4 Comm.)

The parties agree that the government's evidence would show that the date on which the conduct relevant to the offense (§ 1B1.3) began is April 20, 2011. The conduct occurred in the State and District of Colorado:

The parties agree that the government's evidence would be:

On April 20, 2011, at approximately 11:52 a.m., the Jefferson County Sheriff's Office and the West Metro Fire Department were dispatched to a fire in a corridor at Southwest Plaza Mall, 8501 W. Bowles Avenue, County of Jefferson, State of Colorado. When fire personnel arrived, they were advised that the fire -- which was extinguished – had been in a corridor used as an employee entrance and for store deliveries. The corridor is located to the west of the south facing food court entrance.

An employee at Al's Formal Wear, whose store's rear entrance is located in the corridor, told investigators he smelled smoke coming from the rear door. The employee looked in the corridor and saw flames coming from what he believed to be a small propane tank. The employee returned to the store and called Southwest Plaza Security. A security officer responded. When he got to the corridor, the security officer saw flames coming from what he believed to be two propane tanks that were side by side.

4

Members of the West Metro Fire Department entered the corridor and saw two small "Coleman" style propane tanks. Fire department personnel evacuated the corridor and assisted mall security and sheriff's deputies with evacuating the mall.

At about 12:44 p.m., Jefferson County Sheriff's Investigator Donald Roach, who is a trained fire/arson investigator, arrived at Southwest Plaza Mall. Roach and other investigators began to examine the scene.

Investigators observed that the entrance to the corridor did not appear to be a normal public entrance; however, mall employees explained that this entrance door is kept unlocked during normal business hours. From the entry door, there is a set of stairs to the left and the corridor extends into the mall to the right. Along the right side of the wall leading to the mall are several electrical meters and equipment above a small ledge. Placed on the ledge in between the last two sets of meters and electrical boxes were what appeared to be two one pound Coleman style propane tanks duct taped together. There was burnt debris along the sides and bottom of the propane tanks as well as debris on the floor. There was fire damage to the wall and electrical boxes. Additionally, one of the meters was melted.

In examining the debris on the floor, investigators observed the packaging of a box of wooden matches within the debris. There was one partially burnt wooden match on the floor near the match box along with several burnt matchsticks found in the debris along the side of the propane tank on the right side. While investigators were examining the evidence, they discovered a galvanized steel pipe with caps on both ends, which was

believed to be a pipe bomb. Investigators cleared out of the corridor and contacted Jefferson County Sheriff's Office Bomb Squad who initiated Render Safe Procedures ("RSP") for the pipe bomb. During the RSP, one of the caps on the pipe bomb fell off and a black powder came out of the pipe.

After the bomb squad deemed the area safe, investigators returned to the corridor to complete the collection of evidence. Upon examination of the two devices, investigators found that the two propane tanks were taped together and a paper material was stuffed along side the tanks and one of the electrical boxes. Melted to the bottom and side of one of the propane tanks was what appeared to be a plastic bag from Target.

All of the components of the two devices, the matches, debris, and suspected smokeless powder were photographed and collected. These items were sent to the FBI Laboratory in Quantico, Virginia.

Investigators reviewed surveillance video from the Southwest Plaza Mall starting with the corridor where the two incendiary devices were located. Surveillance video showed that at about 11:43 a.m., on April 20, 2011, an older white male, wearing a dark colored baseball hat, blue jeans, a dark colored jacket, and a horizontal striped shirt entered the employee entrance carrying a white and red plastic bag. This male was later identified as the defendant, Earl Albert Moore. The defendant left the corridor out of the employee entrance at about 11:44 a.m., without the plastic bag. The only other individual seen on the video in the corridor during this time period was the security officer who responded to the report of a fire in the corridor.

After obtaining a physical description of the defendant, investigators went to the Target Store located next to the mall. From interviews and review of surveillance video from Target, investigators learned that the same male purchased a two-pack of Coleman Propane fuel canisters, and a roll of one inch Gorilla tape along with other items at approximately 8:06 p.m. on April 19, 2011, and left the store.

On April 21, 2011, investigators contacted officials with the Regional Transportation District ("RTD"). Investigators reviewed video footage for bus routes coming to or leaving the area of Southwest Plaza Mall. Investigators discovered that the male seen in the surveillance videos from both the Southwest Plaza Mall and Target was on an April 19, 2011 video for an RTD bus leaving the area of the Southwest Plaza Mall. The defendant is seen boarding a bus at the stop on West Cross Drive at about 8:50 p.m. This stop is located behind the Target store. The defendant remained on the bus until it stopped in the area of West 44th Avenue and Wadsworth Boulevard.

Forensic examiners at the FBI lab found DNA on evidence collected from the scene of the fire. This DNA profile matched the defendant, Earl Albert Moore. Additionally, forensic examiners determined that the items recovered constituted a destructive device – specifically an improvised explosive device, also known as a homemade bomb.

Investigators obtained two photographs of Moore, one from his Colorado Driver's License and another from his most recent booking into the Jefferson County Jail. The photographs match the video footage of the defendant from the Southwest Plaza Mall on April 20, 2011, the Target store on April 19, 2011 and the RTD footage from April 19, 2011.

The Southwest Plaza Mall and its associated property is owned by General Growth Authority. General Growth Authority's corporate offices are based out of Chicago, IL. The Southwest Plaza Mall also contains numerous stores that sell goods shipped in interstate commerce. Thus, the building and other property damaged and destroyed is in and does affect interstate commerce.

Investigators obtained an arrest warrant for the defendant. After his arrest, Moore was advised of his constitutional rights. Moore voluntarily waived his rights and confessed to investigators that he was the person who had placed and lit the device at the Southwest Plaza Mall. Moore explained that he was unaware that his acts occurred on the anniversary of the Columbine School shootings; and, that what he did had nothing to do with that event.

## V. SENTENCING COMPUTATION

The parties understand that the court may impose any sentence, up to the statutory maximum, regardless of any guideline range computed, and that the court is not bound by any position of the parties. (§ 6B1.4(d)) The court is free, pursuant to §§ 6A1.3 and 6B1.4, to reach its own findings of facts and sentencing factors considering the parties'

stipulations, the pre-sentence investigation, and any other relevant information. (§ 6B1.4 Comm.; § 1B1.4)

To the extent the parties disagree about the sentencing factors, the computations below identify the factors which are in dispute. (§ 6B1.4(b)).

A. The base guideline for Count 2 is determined by § 2K2.4(c), referencing § 4B1.1(c), with a base offense level of 37.

B. Specific offense characteristics do not apply pursuant to § 2K2.4(c).

C. Victim related, role in offense, obstruction related, or multiple count adjustments do not apply pursuant to § 2K2.4(c).

D. The adjusted offense level would therefore be 37.

E. The defendant should receive a 3 level adjustment for acceptance of responsibility. The resulting offense level would therefore be 34.

F. The parties understand that the defendant's criminal history computation is tentative. The criminal history category is determined by the Court. Known facts regarding the applicable criminal history are as follows:

The defendant is a career offender as defined in § 4B1.1, having at least two prior felony convictions of either a crime of violence or a controlled substance offense.

Based on that information, if no other information were discovered, the defendant's criminal history category would be VI.

G. The guideline range resulting from the estimated offense level of 34 above, and the (tentative) criminal history category of VI above, is 262-327 months as prescribed by § 4B1.1(c)(3). However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the estimated offense level 34 above could conceivably result in a range from 151 months (bottom of Category I), to 327 (top of Category VI).

However, pursuant to the mandatory minimum prescribed by statute for a violation of 18 U.S.C. § 924(c)(1)(B)(ii), the defendant must be sentenced to not less than 360 months (30 years).

H. Pursuant to guideline § 5E1.2, assuming the estimated offense level of 34 above, the fine range for this offense would be $17,500 to $175,000, plus applicable interest and penalties.

I. Pursuant to guideline § 5D1.2, if the Court imposes the term of supervised release, that term shall be not more than 5 years.

J. Restitution is to be determined.

## VI. WHY THE PROPOSED PLEA DISPOSITION IS APPROPRIATE

The parties believe the proposed plea agreement is appropriate because all relevant conduct is disclosed, the sentencing guidelines take into account all pertinent sentencing factors with respect to this defendant, and the charges to which the defendant has agreed to plead guilty adequately reflect the seriousness of the actual offense behavior.

This document states the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings or assurances, express or implied. In entering this agreement, neither the government nor the defendant have relied, or are relying, on any terms, promises, conditions or assurances not expressly stated in this agreement.

Date: 12/27/11

*Earl Moore*
EARL ALBERT MOORE
Defendant

Date: 12/27/11

*Robert L. Pepin*
ROBERT W. PEPIN
Attorney for Defendant

Date: 12/30/11

BRIAN R. LEEDY
Attorney for Defendant

Date: 12/30/2011

GREGORY A. HOLLOWAY, WSBA #28743
Assistant U.S. Attorney

11